IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| DELTA T, LLC, d/b/a BIG ASS FANS, | : | Case No. 1:20-cv-559 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| DAVID T. WILLIAMS, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL**
**(Doc. 36)**

This matter is before the Court on a motion to compel filed by Plaintiff Delta T, LLC, d/b/a Big Ass Fans ("BAF"). (Doc. 36.) BAF requests that the Court order Defendants David T. Williams and Vortikul, Ltd. (collectively, "Defendants") to answer certain interrogatories and produce documents that BAF has requested. The parties tried and failed to resolve this dispute between themselves. For the reasons below, the Court grants in large part the motion to compel.

**FACTS**

BAF brings this action to recover compensatory and punitive damages for the defendants' alleged violations of their fiduciary, contractual, and other duties. BAF designs and sells residential and commercial ceiling fans. (Doc. 35 at ¶ 13.) Defendant David Williams was the highest-ranking officer at BAF's Singapore subsidiary from January 2015 to March 2017. (Doc. 35 at ¶ 14.) In that role, he supervised several BAF

1

employees, including Wee Yong Teo, Tze Seng Lee, and Ming Min Rachel Leo. (*Id.* at ¶ 15.) He owed contractual duties and fiduciary duties of confidence, trust, and loyalty to BAF. He also agreed to not compete with BAF or attempt to solicit BAF's customers or employees. (*Id.* at ¶ 16.)

BAF alleges that, despite Williams' obligations to BAF, he organized DAFYDD & Yong Pt. Ltd (D&Y) to act as a sales organization in competition with BAF. (*Id.* at ¶ 18.) He recruited BAF employees, Teo and Lee, to help him. (*Id.* at ¶ 19.) D&Y's website displays residential and commercial fans that the site identifies as Vortikul fans but appear to be copies of BAF's fans. (*Id.* at ¶ 18.) Sometime after Williams left the employ of BAF, but while he was still bound by the non-compete agreement, he incorporated Vortikul. (*Id.* at ¶ 20.) These actions, BAF alleges, violated Williams' fiduciary and contractual duties. It asserts twelve claims against the defendants.

The parties conducted limited expedited discovery, which included the deposition of Williams and at least two rounds of interrogatories and requests for production. Williams and Vortikul objected to some of BAF's discovery requests. After the parties failed to resolve their differences on their own, BAF brought this motion to compel.

## LAW

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). Federal Rule of Civil Procedure 26(b) identifies the acceptable scope of discovery:

2

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."), 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)[.]"). In short, "a plaintiff should have access to information necessary to establish her claim, but . . . a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)); *see also Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015).

The movant bears the initial burden of showing that the information sought is relevant. *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to

3

resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

Finally, a party moving for an order compelling discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a); *see also* S.D. Ohio Civ. R. 37.1 ("[M]otions . . . relating to discovery shall not be filed in this Court . . . unless the parties have first exhausted among themselves all extrajudicial means for resolving the differences."). Here, BAF certifies that it conferred with Defendants' counsel in an effort to resolve the dispute, and there is no dispute that the parties have conferred in good faith. (Doc. 36.)

**ANALYSIS**

BAF moves to (1) compel the production of Vortikul's and D&Y's current and previous internet webpages (and other marketing materials) that promote fans and (2) submit Williams' and Vortikul's electronic devices to a limited forensic inspection, along with relevant information from their mobile phone and internet providers.

**I.     BAF's interrogatories and requests pertaining to current and previous Vortikul and D&Y webpages and other marketing materials**

BAF argues that Williams and Vortikul should be compelled to identify and produce all Vortikul and D&Y internet webpages, current and previous, and related marketing materials that promote fans. The interrogatories at issue are the Williams Interrogatories Nos. 4 and 5 and the Vortikul Interrogatories Nos. 5 and 6. (Doc. 36-2 at PageID 1325-26; Doc. 36-3 at PageID 1360.) The gist of these requests is BAF's effort to

obtain webpages, advertisements, and any related promotional material Williams used to sell non-BAF fans. From BAF's perspective, the heart of this case is the claim that Williams violated his obligations to BAF by using Vortikul and D&Y to compete with BAF. And, BAF says, the promotional content found on those webpages is relevant to that claim. A deeper issue BAF raises is whether Williams is intentionally withholding relevant information.

Much of Defendants' recitation of the facts amounts to an argument against the merits of BAF's cases. Defendants claim they have already provided BAF with all the responsive information they possess. They also argue that the discovery requests seek information that is highly personal, confidential, and not proportionate to the needs of the case.

As an initial point, Defendants' position on the merits of the case has little to do with whether BAF's discovery requests are valid. This case is not in a procedural posture where this Court can adjudicate the merits of any of BAF's claims or Defendants' defenses. This Court may not deny a party relevant discovery because the other party, predictably, has a different view of the legal claims' merit. On the contrary, this Court "must permit the discovery so long as Plaintiff has carried his burden under the federal rules." *Singler v. ConAgra Foods, Inc.*, No. 1:18-CV-271, 2020 WL 7062502, at *4 (S.D. Ohio Dec. 2, 2020).

BAF has shown that the requested discovery is relevant to its claims. The claims here have to do with whether Defendants violated their contractual and fiduciary obligations by competing in the fan business. Promotional content on internet webpages

5

affiliated with another business enterprise is obviously relevant to those claims. So are documents related to such promotional content, webpages, and advertising.

Defendants object on the grounds that the discovery would contain highly personal or confidential information. The Court is skeptical that webpages promoting ceiling fans, and related documents, would contain such material. In any case, these objections are conclusory and nonspecific. The discovery rules require more than that. "The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). As Defendants' objections lack any explanation, they fail. *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 411 (N.D. Ohio 2011); *Delta Air Lines, Inc. Influence Direct, LLC Delta Air Lines, Inc. v. Riddle*, No. 3:14-0926, 2015 WL 12731565, at *1 (M.D. Tenn. June 19, 2015). Defendants' objection that the requests are disproportionate to this case's needs fails too, for the above reason and another: the requested information would be important in resolving these claims. Fed. R. Civ. P. 33(b)(1). Defendants' blanket, unexplained objection on proportionality fails to acknowledge what this case is about and how the requested information relates to the allegations.

The trickier matter is whether Williams or Vortikul have discoverable material but are withholding it. BAF has identified websites, which have been taken down, that contain promotional material about fans. Defendants do not deny that BAF obtained that material without their assistance. Nor have they identified any material that they have produced related to these requests. Rather, they take the position that BAF itself found everything there is to find and they don't have anything else.

But Defendants' own representations contradict their position that they have

6

nothing left to produce. They admit they sent cease and desist letters to D&Y and terminated Vortikul's "only distribution agreement." (Doc. 37 at 2.) Yet they have failed to produce these documents. (*See* Doc. 39 at 5.) Such material is relevant and the discovery rules require production upon request unless Defendants identify an undue burden or harm. *O'Malley*, 311 F.R.D. at 463. The only burden they refer to is the burden of defending against this motion. The relevant question, however, is whether the discovery would be unduly burdensome or expensive to *produce*, not to object to and litigate. Fed. R. Civ. P. 26(b)(1); *see Singler*, 2020 WL 7062502, at *5. And, on that score, Defendants identify no burden.

For these reasons, the Court grants BAF's motion as to all interrogatories and document requests in dispute.

## II. Forensic imaging

BAF proposes a limited third-party forensic inspection of Defendants' electronic devices. The protocol would be as follows: (1) an independent forensic examiner, either agreed upon by the parties or appointed by the Court, would perform the examination of the devices; (2) the search would be limited to specific search terms designed solely to generate communications between Defendants and former BAF-Singapore employees and between Defendants and commercial parties involved in the fan business; and (3) the examiner would first provide the documents generated by the search to Defendants' counsel, who may review it before producing it to BAF's counsel and assert legitimate objections, presenting to this Court with a copy of the objected-to document for an in camera inspection. *See Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 653 (D. Minn.

2002) (approving a similar procedure).

Defendants counter that there is no good cause for "such invasive tactics." (Doc. 37 at 8.) They cite two cases, *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008) and *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. CIV.A. 2:06-CV-899, 2007 WL 1723509 (S.D. Ohio June 12, 2007). In *John B.*, the Sixth Circuit advised that forensic imaging "should be employed in a very limited set of circumstances." *John B.*, 531 F.3d at 459. In *Scotts*, the court declined to order an examination of one party's computer based on the requesting party's "mere suspicion" that the defendant may have been withholding discoverable information. *Scotts*, 2007 WL 1723509, at *2. Based on these decisions, Defendants argue that BAF has offered nothing to justify the discovery sought except for the possibility of discovery misconduct. They also claim that Williams' privacy concerns outweigh the alleged necessity of forensic discovery.

"A forensic image, or mirror image, of a hard drive replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." *Bennett v. Martin*, 186 Ohio App. 3d 412, 2009-Ohio-6195, 928 N.E.2d 763, ¶ 40 (10th Dist.) (cleaned up). *See also List Indus., Inc. v. Umina*, No. 3:18-CV-199, 2019 WL 1933970, at *1 (S.D. Ohio May 1, 2019) ("A forensic image is an exact bit-for-bit duplication[] of a storage device. It does not alter anything on the original device, and is verifiable, meaning it uses hash values to confirm an exact bit-for-bit match."). True, the Sixth Circuit has noted that forensic imaging should only be employed in limited circumstances. But it recognized in the same decision that "forensic imaging is not uncommon" in discovery and that courts have compelled forensic imaging of opposing

8

parties' devices for a variety of reasons. *John B.*, 531 F.3d at 459. The court provided some guidance for district courts making the decision of whether to compel forensic imaging. First, courts should tread lightly before compelling mirror imaging in computers when the request is "extremely broad in nature" and the connection between the devices and the legal claims is unduly vague or unsubstantiated. *Id.* at 460. Second, mere skepticism that an opposing party has not produced all the relevant material does not justify "drastic electronic discovery measures." *Id.* And, third, even if forensic imaging is acceptable in a given case, a district court must still consider the significant interests at stake before ordering such a procedure. *Id.*

A significant issue in *John B.* was the district court's failure to properly account for the applicable privacy and confidentiality concerns. The district court had ordered the plaintiff's computer expert to enter state agencies and the offices and homes of state officials to make forensic copies of electronic devices, whether state-owned or privately owned. Such disclosure would "almost certainly" have resulted in the production of confidential state or private personal information wholly unrelated to the litigation. *Id.* at 460. Besides the privacy and confidentiality concerns, there were also weighty federalism and comity implications "not present in typical civil litigation." *Id.* at 461. That is, many of the computers had contained information on confidential state matters. *Id.* Since there was no competing interest overriding the risks, the order was clearly erroneous. *Id.* at 460.

Similarly, the *Scotts* court observed that courts are "loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion

9

that the opponent may be withholding discoverable information." *Scotts*, 2007 WL 1723509, at *2 (quoting *Diepenhorst v. City of Battle Creek*, No. 1:05CV00734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006)). The requesting party in that case relied on a "mere suspicion" that the opposing party was withholding discoverable material. The plaintiff's speculation was "entirely insufficient" and the defendant offered explanations regarding plaintiff's allegations of discovery misconduct. *Id.* An additional concern was the requesting party's admission that the search would probably result in the production of privileged material. *Id.* at *3.

The Court does not share Defendants' view that the circumstances here parallel those in *John B.* or *Scotts*. Rather, application of *John B.*'s guidance and reference to similar cases show that ordering forensic imaging is appropriate here.

*Limited scope.* First, the scopes of the compelled productions in *John B.* and *Scotts* were vast. By contrast, the proposed scope here is tailored and constrained. BAF proposes tailoring a search, at its own expense, to return only relevant material. To recap, BAF's proposed search will proceed this way: (1) The parties will agree to an independent forensic examiner to create a forensic image of Defendants' electronic devices. (If they cannot agree, the Court will appoint one.) (2) Next, the search of the forensic image will be limited to specific search terms, which BAF attaches to its motion—without objection by Defendants—as Exhibit 14 (Docs. 36-1 at 9; 36-15 at Page ID 1564-69). The search terms are designed to generate only relevant communications. (3) Then, the forensic examiner will first provide the documents generated by the search to defense counsel, who may review them before producing them to BAF's counsel. Several other courts have ordered

similar or identical procedures. *E.g., Genworth Fin. Wealth Management v. McMullan*, 267 F.R.D. 443, 447 (D. Conn. 2010); *Bennett v. Martin*, 186 Ohio App. 3d 412, 2009-Ohio-6195, 928 N.E.2d 763, ¶ 47 (10th Dist.) (articulating a practically identical protocol based on collected cases); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 653 (D. Minn. 2002); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 643 (S.D. Ind. 2000); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999). *See also List Indus.*, 2019 WL 1933970, at *6.

Such a search is not "extremely broad in nature." *John B.*, 531 F.3d at 460. On the contrary, the scope's restrictions will generate relevant discovery and prevent the production of privileged material. As another Ohio district court has observed, "[t]he obvious concern in *Goetz* was that such discovery would allow access to substantial irrelevant and private information." *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2009 WL 10723012, at *4 (N.D. Ohio Feb. 9, 2009). But that is not a concern here, given BAF's proposed limits on the search. Moreover, there is a reasonable connection between the electronic devices and the claims, because the webpages and emails, for instance, would clearly have been created on a computer. *See John B.*, 531 F.3d at 460.

A limited search makes financial sense too. A search designed to return only relevant material may help the parties avoid the front-end expense of manually reviewing documents for privilege. And, since BAF will be financing the search, Defendants' financial burden will be that much less. Indeed, Defendants do not argue that the proposed search would cause them a financial burden. *See Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *4 (D. Kan. Mar. 24, 2006). As

stated above, the burden of litigating this discovery dispute—the only burden Defendants mention—will not carry the day here. Defendants have not explained why the proposed discovery itself would cause a burden that exceeds its likely benefit. *See Singler*, 2020 WL 7062502, at *5.

One loose end to tie up, relevant to scope, is BAF's cursory but significant request that the Court order Defendants to direct their mobile phone and internet carriers to provide the independent forensic examiner with access to the stored records of Defendants' communications, to search them under the same limited protocol. BAF's basis for this request is Williams' testimony that he no longer has access to some of that material. It cites to Williams' testimony that he no longer has access to WhatsApp (Doc. 36-8 at Page ID 1465) or one or two laptops (*id*. at Page ID 1476-77). Defendants push back in terms that are just as broad as BAF's. Compelling forensic imaging of Defendants' electronic devices already calls for rigorous analysis, and compelling them to direct third parties to provide still more access calls for at least the same rigor. But BAF's single sentence in support of its request, with no legal citation, does not provide this Court with enough information to determine whether such a request is legitimate under Fed. R. Civ. P. 26(b)(1). For that reason, the Court denies BAF's request to compel Defendants to direct their mobile phone and internet carriers to provide the independent forensic examiner access to stored records of Defendants' communications.

*Evidence of non-production of relevant material.* Second, this is not a case in which the plaintiff is carried by "mere skepticism that an opposing party has not produced all relevant information." *John B.*, 531 F.3d at 460; *Scotts*, 2007 WL 1723509, at *2. The Court

12

emphasizes that, in this case, BAF presents evidence, besides the deleted webpages, that Defendants possess discoverable information but have not produced it.

First, BAF points to an email Williams sent, but did not produce, to an alleged BAF customer. In the email, Williams identifies himself as the former managing director of BAF and states that he had formed his own company, Vortikul. He tells the potential customer that Vortikul is staffed by "almost entirely former BigAssFans employees" and that "[a]s a result, we were able to design and produce . . . modern residential ceiling fans at much more competitive pricing." (Doc. 36-10 at Page ID 1510.) He goes on to say that he is looking for potential business partners. (*Id.*) Defendants say that they produced "similar" emails, but do not explain why they did not produce this one. (Doc. 37 at 6.) If Defendants intend to make the defense that this email constituted lawful competition, they may do so in a dispositive motion. But that is not a defense to failing to produce relevant information during the discovery stage. *See Singler*, 2020 WL 7062502, at *4.

Second, BAF identifies emails from Williams in August 2016 to Teo, Heather Williams (his sister), and others involving design patents. Defendants appear to take the position that these emails are irrelevant, because they do not relate to fans. But the claims here, as BAF points out, also involve Williams' agreement to "devote the whole of [his] working time and attention to the assignment and . . . [not to] . . . engage in any other business activity in Singapore or any other occupation undertaken for profit or gain." (Doc. 35 at ¶ 16; Doc. 39 at 3, fn. 3.) BAF also observes that one of the email chains concerns a prototype for a light and states that it has been making lights since before 2016. (*See* Doc. 37 at 2.) So these items, which Defendants did not produce, are also relevant.

Third, Defendants themselves make references to relevant extant material that they did not produce. They state that they sent cease-and-desist letters to co-defendant D&Y and terminated Vortikul's "only distribution agreement." (Doc. 37 at 2.) But they have not produced these documents, according to BAF, despite their obvious relevance. Nor have they identified any undue burden.

Such a laundry list of relevant but unproduced discovery clearly places this case at a significant remove from cases like *Scotts*. Recall that the *Scotts* plaintiff relied on the "entirely insufficient" speculation that the defendant had not produced relevant material. *Scotts*, 2007 WL 1723509, at *2. And the *Scotts* defendant had explained away the allegations of misconduct. Here, different facts compel a different outcome. BAF has pointed to several relevant documents that Defendants have not produced. Defendants fail to adequately explain why they did not produce this plainly relevant evidence.

These failures warrant limited forensic imaging of Defendants' electronic devices. As another court within this circuit has recognized, "Courts have recognized that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." *Hawkins v. Ctr. For Spinal Surgery*, No. 3:12-1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015). Other courts have compelled forensic imaging under similar circumstances. *E.g., Simon Prop*, 194 F.R.D. at 641 (permitting plaintiff to mirror image defendant's computers in light of "troubling discrepancies with respect to defendant's document production"); *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *1 (E.D. Mo. Dec. 27, 2006), *as amended on clarification*, No. 4:06CV524-DJS, 2007

WL 685623 (E.D. Mo. Feb. 23, 2007) (allowing an independent expert to obtain and search a mirror image of defendants' computers after court had "cause to question whether defendants have produced all responsive documents"); *Balboa Threadworks*, 2006 WL 763668, at *4 (permitting imaging of defendants' computer where defendants' representation that no responsive materials existed on computer was contradicted by their production of e-mail created on that computer). This Court follows the trend of finding that forensic imaging may be appropriate "based upon discrepancies or inconsistencies in a response to a discovery request or the responding party's unwillingness or failure to produce relevant information." *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. CIV.A. 07-2319-CM, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009) (collecting cases).

*Weighing the interests.* Third, the utility and necessity of forensic imaging here outweigh the privacy and confidentiality concerns inherent in such imaging. *John B.*, 531 F.3d at 460 ("courts must consider the significant interests implicated by forensic imaging before ordering such procedures"); *Bennett*, 928 N.E.2d at 774. BAF has an interest, and a right under Rule 26, in obtaining relevant information that falls within the scope of discovery. But Defendants failed to produce relevant discovery, and subsequently failed to explain why, or why doing so would cause a burden that exceeds its likely benefit. So, whether Defendants are unwilling or unable to cooperate, forensic imaging will help the parties to engage in an appropriate and productive discovery stage. The constrained forensic imaging protocol here will result in the exchange of relevant, proportional discovery—while screening privileged material—or reveal a dearth of material. Either

15

way, the process will be important in resolving the case. *See* Fed. R. Civ. P. 26(b)(1).

Defendants' vague allusions to privacy concerns fail to come to grips with the limited procedure BAF is proposing. Indeed, the restraints on the search should alleviate Defendants' worries. Both parties will have a say in selecting the independent forensic examiner. The search protocol is designed to generate relevant communications. And the forensic examiner will first provide the documents generated by the search to defense counsel, who may review them before producing them to BAF's counsel. Defense counsel may assert objections and produce copies of the objected-to documents for an in camera inspection by this Court. Unlike *John B.*'s clearly erroneous discovery order, which failed to properly account for the case's privacy and confidentiality concerns, the reasonable limitations proposed here will serve as guardrails against unnecessary incursions into Defendants' privacy or excursions into privileged material. *Compare John B.*, 531 F.3d at 460. Defendants' generic evocations of privacy, without more, fall short of showing that the proposed forensic imaging here would be unduly burdensome. *Ameriwood*, 2006 WL 3825291, at *5 (recognizing defendants' privacy concerns, but finding that a similar three-step procedure sufficiently addressed those interests).

For the above reasons, the Court grants BAF's motion to compel, except its request to order Defendants to authorize or direct third parties to give access to the forensic examiner any stored records. To accommodate the review of Defendants' electronic devices, the Court sets forth the following procedure:

(1) Counsel for BAF, Williams, and Vortikul shall meet and confer regarding the designation of an independent forensic examiner ("Examiner"). They shall

16

designate an Examiner within 30 days of this Order. If the parties cannot agree on an Examiner, each party shall submit its recommendation for an Examiner to the Court with a 1-page memorandum, and the Court shall decide.

(2) The Examiner, and any supporting staff, shall sign a confidentiality order. To the extent the Examiner and any additional staff have direct or indirect access to information protected by attorney-client privilege, such disclosure shall not result in any waiver of that privilege.

(3) Defendants Williams and Vortikul shall make all responsive computer equipment available, including applicable personal devices, to the Examiner for inspection, copying, and imaging at a mutually agreeable and non-disruptive time, but no later than February 26, 2021. Defendants shall provide to BAF a detailed report of all equipment produced for imaging by the same date.

(4) The Examiner shall then retrieve responsive documents and material by performing a search limited to the specified search terms found at ECF Document 36-15 at Page ID 1564-69 (Exhibit 14 to BAF's motion to compel, Doc. 36).

(5) BAF shall pay for the Examiner's time and services.

(6) Defendants Williams and Vortikul shall review the responsive files for privilege, create a privilege log, and produce the non-privileged files and the privilege log to BAF. The deadline to produce shall be within 28 days after the examination or March 26, 2021, whichever is sooner. If BAF objects to Defendants' withholding of any document as privileged or otherwise, the parties shall meet and confer in good faith to resolve their differences. If they fail to resolve the matter between

themselves, they shall follow the procedures outlined in the undersigned district judge's standing order regarding discovery disputes.

(7) Defendants are not required, at this time, to authorize their mobile phone or internet carriers to provide the Examiner with access to Defendants' stored records.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** BAF's motion to compel. BAF's motion is denied as to the request to order Defendants to direct their phone and internet providers to give the Examiner access to stored records. BAF's motion is granted as to the rest of its requested relief. Defendants Williams and Vortikul shall provide further responses to BAF's interrogatories and responses to his requests for production within 21 days of this Order and comply with all other requirements and deadlines set forth in this Order.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND